**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 1:25-cv-24964-GAYLES**

**DIMITRI ALBERT EDOUARD VORBE,**

**Petitioner**,

**v.**

**FIELD OFFICE DIRECTOR, Miami Field Office, U.S. Immigration and Customs Enforcement, *et al.*,**

**Respondents.**
______________________________________/

# ORDER

**THIS CAUSE** is before the Court upon Petitioner Dimitri Albert Edouard Vorbe's Verified Petition for Writ of Habeas Corpus (the "Petition") [ECF No. 1]. The Court has reviewed the Petition and the record and is otherwise fully advised. For the reasons explained, the Petition is **GRANTED IN PART**.

## I. BACKGROUND

### A. Petitioner's Immigration History in the United States

On January 4, 2020, Petitioner, a Haitian national, entered the United States through a visitor's visa. [ECF No. 1 ¶ 27]. On July 23, 2020, the Republic of Haiti Superior Court in Port-Au-Prince, Haiti issued a criminal arrest warrant against Petitioner for "corruption, forgery, money laundering, illicit enrichment, and conspiracy" allegedly committed in Haiti. [ECF No. 9 at 2]. On August 21, 2020, U.S. Immigration and Customs Enforcement ("ICE") detained Petitioner and took him to Krome Service Processing Center ("Krome"). [ECF No. 1 ¶ 28]. On the same date, Petitioner was issued a Notice to Appear which stated he was a nonimmigrant who remained in

the United States for a time longer than permitted. [ECF No. 9-4 at 1].

On August 27, 2020, an Immigration Judge granted Petitioner bond after his U.S. citizen son filed a Form I-130 Petition for Alien Relative on his behalf. [ECF No. 1 ¶ 28]. On December 17, 2020, U.S. Citizenship and Immigration Services ("USCIS") approved the Form I-130 Petition. *Id.* ¶ 30. On June 16, 2021, Petitioner, through his counsel, applied for Temporary Protected Status ("TPS") from Haiti with USCIS. *Id.* ¶ 32. USCIS approved Petitioner's TPS application on July 17, 2023. *Id.* ¶ 33.

Sometime thereafter, Secretary of State Marco Rubio issued a Memorandum specific to Petitioner.[1] [ECF No. 1-3 at 12]. According to Secretary Rubio's Memorandum, he determined that Petitioner "is a deportable alien under [8 U.S.C. § 1227(a)(4)(C)]" because the Secretary has "reasonable ground to believe [Petitioner's] presence or activities in the United States would have potentially serious adverse foreign policy consequences for the United States." *Id.* According to Secretary Rubio, Petitioner "engaged in a campaign of violence and gang support that contributed to Haiti's destabilization," so "[a]llowing [Petitioner] to remain [in the United States] undermines U.S. foreign policy interest in stabilizing Haiti and the region, as it condones his actions contrary to that objective." *Id.*

On September 23, 2025, ICE detained Petitioner at his Miami home and transferred him to Krome. [ECF No. 1 ¶ 37]. On the same date, ICE served Petitioner with an additional charge of removability as "an alien who the Secretary of State has reasonable ground to believe [his] presence or activities in the United States would have potentially serious adverse foreign policy consequences" under § 1227(a)(4)(C). *Id.* ¶ 38. The next day, the Department of Homeland Security ("DHS") withdrew Petitioner's TPS designation and denied his re-registration application

[1] The Memorandum is undated.

under 8 U.S.C. § 1182(a)(3)(C)[.]" *Id.* ¶ 41.

On October 10, 2025, Petitioner filed a Motion for Custody Redetermination seeking to be released on bond from civil immigration detention. *Id.* ¶ 42. On October 15, 2025, DHS opposed Petitioner's bond redetermination request because, pursuant to 8 C.F.R. § 1003.19(h)(2)(i)(C), the Immigration Judge lacks jurisdiction to re-determine custody. *See id.* ¶ 44. On October 23, 2025, the Immigration Judge denied Petitioner's request for custody redetermination, citing *Matter of Ruiz-Massieu*, 22 I. & N. Dec. 833 (B.I.A. 1999), and concluding "the court lacks jurisdiction." [ECF No. 1-3 at 25]. Petitioner remains detained in immigration custody.

**B. Procedural History**

On October 27, 2025, Petitioner filed the Petition requesting either immediate release from Krome or an individualized bond hearing. *See* [ECF No. 1 at 15]. The Court issued an Order to Show Cause on October 29, 2025. [ECF No. 6]. On November 6, 2025, the Court issued an Amended Order to Show Cause requiring Respondents to file a response to the Petition, [ECF No. 8], which they filed that same day, [ECF No. 9]. On November 11, 2025, Petitioner filed his Traverse. [ECF No. 10].

On May 11, 2026, the parties jointly moved to stay the Petition pending Petitioner's removal to the Dominican Republic. [ECF No. 23]. According to the parties, "Petitioner [had] secured permission from the Government of the Dominican Republic to admit him" there. *Id.* ¶ 2. Because the parties believed that Petitioner would be accepted into the Dominican Republic, Petitioner intended to withdraw his application for relief from removal and accept an Immigration Judge's order of removal to the Dominican Republic. *Id.* ¶ 4(a). The next day, the Court granted the parties' Joint Motion and stayed the action. [ECF No. 24]. A week later, the parties jointly moved to the lift the Court's stay because the Dominican Republic prohibited Petitioner from

entering that country. [ECF No. 25 at 4]. On May 20, 2026, the Court lifted the stay and scheduled a hearing on the Petition for June 9, 2026. [ECF No. 26]. After the hearing, at the Court's request, the parties filed supplemental briefs regarding Petitioner's prolonged immigration detention before the entry of a final order of removal. [ECF Nos. 31, 32].

## II. LEGAL STANDARD

District courts may grant writs of habeas corpus if a person is "in custody in violation of the Constitution or laws or treaties of the United States." *See* 28 U.S.C. § 2241(a), (c)(3). Indeed, "[h]abeas is at its core a remedy for unlawful executive detention." *Munaf v. Geren*, 553 U.S. 674, 693 (2008). The Supreme Court has reaffirmed that "§ 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to" immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 688 (2001).

## III. ANALYSIS

### A. Petitioner's Habeas Petition

Petitioner alleges that Respondents' decision to subject him to mandatory detention without a bond hearing constitutes an ultra vires action unauthorized by the Immigration and Nationality Act ("INA") and violates his Due Process rights under the Fifth Amendment to the United States Constitution.[2] *See* [ECF No. 1 ¶¶ 53–76]. Petitioner asks this Court to grant his immediate release or to order that he be provided with an individualized bond hearing. *See id.* at 15. In Petitioner's supplemental brief, he separately requests that this Court, and not an Immigration Judge, conduct a bond hearing because the standard the Immigration Judge must apply effectively precludes

---

[2] Petitioner also initially argued that Respondents failed to meet their burden of showing that he falls within the scope of 8 C.F.R. § 1003.19(h)(2)(i)(C) because they relied "solely on a conclusory and undated letter, purporting to be from the Secretary of State," that "offers no factual findings, evidence, or documentation supporting those claims." *See* [ECF No. 1 ¶ 69]. Respondents argued in response that "Petitioner's challenge to the Secretary's determination invokes an unreviewable political question." *See* [ECF No. 9 at 2, 20–23]. The Court does not analyze Petitioner's arguments or determine whether the political question doctrine applies here because Petitioner withdrew the argument in his Traverse. *See* [ECF No. 10 at 2].

releasing Petitioner on bond. *See* [ECF No. 31].

In their response to the Court's Order to Show Cause, Respondents argue that the Court lacks jurisdiction to adjudicate Petitioner's claims because he failed to exhaust his administrative remedies. *See* [ECF No. 9 at 9–19]. Respondents also contend that Petitioner's Due Process claim has no merit. *See id.* at 19–23. The Court addresses each argument in turn.

**B. Subject Matter Jurisdiction**

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citation omitted). Accordingly, before the Court can proceed, it must determine whether it has jurisdiction over this action. *See Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1323 (11th Cir. 2012) ("Prior to making an adjudication on the merits, we must assure ourselves that we have jurisdiction to hear the case before us.").

Petitioner argues that the Court has federal question jurisdiction under 28 U.S.C. § 1331 and that it may grant him relief under several authorities, including the Suspension Clause of the United States Constitution, 28 U.S.C. § 1651 (the All-Writs Act), 28 U.S.C. §§ 2201–02 (the Declaratory Judgment Act), and 28 U.S.C. § 2241 (the power to grant a Writ of Habeas Corpus). *See* [ECF No. 1 ¶ 22]. Respondents, on the other hand, contend that "Petitioner has been charged as removable under 8 U.S.C. § 1227(a)(4)(C) for foreign policy concerns and therefore is subject to detention pursuant to 8 U.S.C. § 1226." Respondents also argue that various statutes strip the Court of jurisdiction to evaluate Petitioner's claims, among them 8 U.S.C. § 1252(b)(9), (g), and 8 U.S.C. § 1226(e). *See* [ECF No. 9 at 2, 9–18]. The Court agrees with Petitioner.

**1. 8 U.S.C. § 1252(b)(9)**

Respondents assert that because Petitioner's detention is inextricably linked to his removability, 8 U.S.C. § 1252(b)(9) bars the Court from reaching the merits of Petitioner's claims.

[ECF No. 9 at 9–14]. That provision provides: "Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States . . . shall be available only in judicial review of a final order." 8 U.S.C. § 1252(b)(9). According to Respondents, Petitioner instead must pursue his claims through the immigration appeal process and raise them before the Eleventh Circuit. *See* [ECF No. 9 at 11]; 8 U.S.C. § 1252(a)(2)(D) (explaining that provisions limiting or eliminating judicial review should not be "construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals").

Petitioner responds that he is not contesting his removability, "challenging the initial discretionary decision or action to detain him," "challenging the commencement of his removal proceedings, or" challenging "the execution of a (non existent) removal order." [ECF No. 10 at 7, 9]. Instead, he is simply challenging his continued detention without an individualized bond hearing. *See id.* at 2. As a result, Petitioner maintains that § 1252(b)(9) does not strip the Court of jurisdiction over his claim. Petitioner is correct.

Claims seeking a court-ordered bond hearing are not challenges to removability. *See Arroyo v. Diaz*, 818 F. Supp. 3d 1387, 1392 (S.D. Fla. 2026) (holding that "§ 1252(b)(9) does not strip" a court's "jurisdiction over a petition that seeks a bond hearing while the petitioner is being detained and does not challenge removal itself"); *Nielsen v. Preap*, 586 U.S. 392, 402 (2019) (explaining "§ 1252(b)(9) does not present a jurisdictional bar" when noncitizens are "not asking for review of an order of removal," "not challenging the decision to detain them in the first place or to seek removal as opposed to the decision to deny them bond hearings," and "not even challenging any part of the process by which their removability will be determined" (citation

modified)). For that reason, § 1252(b)(9) does not bar the Court from hearing the claim. *See Nielsen*, 586 U.S. at 402; *Arroyo*, 818 F. Supp. 3d at 1392; *Castillo v. Field Off. Dir. of Enf't & Removal Operations*, 829 F. Supp. 3d 1155, 1160 (S.D. Fla. 2025).

**2. 8 U.S.C. § 1252(g)**

Next, Respondents argue that Petitioner's claims arise from a decision to "commence proceedings," and as such, the Court lacks jurisdiction to adjudicate the merits of those claims. [ECF No. 9 at 14]. In support, Respondents cite to § 1252(g), which provides: "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g). Petitioner responds that § 1252(g) does not bar the universe of claims related to deportation and that courts have consistently determined that § 1252(g) does not prohibit assessing the lawfulness of mandatory detention. [ECF No. 10]. Again, Petitioner is correct.

As the Supreme Court has explained, § 1252(g) is read narrowly and "applies only to three discrete actions that the Attorney General may take: [his] decision or action to *commence* proceedings, *adjudicate* cases, or *execute* removal orders." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (quotation marks omitted). While Respondents note that other circuits interpret immigration detention as part of the Attorney General's decision to commence proceedings, *see* [ECF No. 9 at 14–17], courts in this Circuit do not. *See, e.g.*, *Castillo*, 829 F. Supp. 3d at 1160; *Acosta v. Field Off. Dir.*, No. 26-CV-60687, 2026 WL 972366, at *1 (S.D. Fla. Apr. 10, 2026) ("Neither 8 U.S.C. § 1252(g) nor 8 U.S.C. § 1252(b)(9) prevents a court from considering a challenge to the legality of a petitioner's detention."). Because Petitioner's challenge to the lawfulness of his detention is not one of the three discrete actions identified in *Reno*, at least

as courts in this Circuit have interpreted them, § 1252(g) is not a jurisdictional bar to the Court reviewing the merits of Petitioner's claims.

**3. 8 U.S.C. § 1226(e)**

Finally, Respondents argue that § 1226(e) presents an additional bar to the Court's jurisdiction. [ECF No. 9 at 17–18]. That provision provides: "The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole." 8 U.S.C. § 1226(e). As he did to Respondents' other jurisdictional challenges, Petitioner responds that § 1226(e) does not apply when a claim contests the legality of mandatory detention, as he does here. [ECF No. 10]. Petitioner is correct.

This argument has been definitively resolved by the Supreme Court. More than twenty years ago, that Court recognized that § 1226(e) "contains no explicit provision barring habeas review," and it held without qualification "that its clear text does not bar" a "constitutional challenge to the legislation authorizing [] detention without bail." *See Demore v. Kim*, 538 U.S. 510, 517 (2003); *Nielsen*, 586 U.S. at 401. Petitioner is not attacking the Attorney General's decision to detain him in the first place or an Immigration Judge's discretionary decision to deny him bond. Instead, he argues the statute making him removable (§ 1227(a)(4)(C)) does not mandate detention without bond during removal proceedings and the regulation that purports to do so (8 C.F.R. § 1003.19(h)(2)(i)(C)) conflicts with Congress's statutory grant of authority. *See generally* [ECF No. 31]. As a result, § 1226(e) does not strip the Court of jurisdiction over Petitioner's claims. Because none of Respondents' jurisdictional arguments affects the Court's authority to decide this case, the Court has subject matter jurisdiction to reach the merits of

Petitioner's claims.

### C. Exhaustion of Administrative Remedies

In a final attempt to dissuade the Court from reaching the merits of Petitioner's claims, Respondents argue Petitioner was required to appeal the Immigration Judge's bond denial to the Board of Immigration Appeals (the "BIA"). [ECF No. 9 at 7–9]. Because he did not, they assert the Court should reject the Petition as an attempt to circumvent immigration procedures. *See id.* Petitioner responds that exhaustion is not required here because, among other things, the BIA is unlikely to provide relief commensurate with his claim and does not have the authority to resolve constitutional claims. [ECF No. 10]. The Court agrees that exhaustion was not required here.

"The doctrine of exhaustion of administrative remedies is well established in the jurisprudence of administrative law. The doctrine provides that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Woodford v. Ngo*, 548 U.S. 81, 88–89 (2006) (citations and quotation marks omitted). As the Supreme Court has explained, "[e]xhaustion of administrative remedies serves two main purposes":

> First, exhaustion protects administrative agency authority. Exhaustion gives an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages disregard of the agency's procedures.
>
> Second, exhaustion promotes efficiency. Claims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court. In some cases, claims are settled at the administrative level, and in others, the proceedings before the agency convince the losing party not to pursue the matter in federal court. And even where a controversy survives administrative review, exhaustion of the administrative procedure may produce a useful record for subsequent judicial consideration.

*Id.* (citation modified).

Still, an exhaustion requirement is not always jurisdictional. *See Santos-Zacaria v.*

*Garland*, 598 U.S. 411, 415–17 (2023). Sometimes it is merely a "claim-processing rule," *see id.* at 417, which seeks "to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times," *Santiago-Lugo v. Warden*, 785 F.3d 467, 472 (11th Cir. 2015) (quotation marks omitted). When an exhaustion requirement is jurisdictional, the failure to comply with it strips a federal court of its power to adjudicate any unexhausted claim. *See id.* at 471–73. When it is merely a claim-processing rule, on the other hand, the court retains subject matter jurisdiction over unexhausted claims.[3] *Id.* at 471.

To determine whether an exhaustion requirement is jurisdictional or not, courts "look to see if there is any clear indication that Congress wanted the rule to be jurisdictional." *See Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 436 (2011) (quotation marks omitted). Generally, courts "treat a procedural requirement as jurisdictional only if Congress clearly states that it is." *Boechler, P.C. v. Comm'r*, 596 U.S. 199, 203 (2022) (quotation marks omitted); *see also Santiago-Lugo*, 785 F.3d at 473 ("In other words, where Congress does not say there is a jurisdictional bar, there is none."). Of course, "Congress need not incant magic words, but the traditional tools of statutory construction must plainly show that Congress imbued a procedural bar with jurisdictional consequences." *Boechler,* 596 U.S. at 203–04 (citations and quotation marks omitted).

"Where Congress specifically mandates, exhaustion is required." *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992). "But where Congress has not clearly required exhaustion, sound judicial discretion governs." *Id.* And where judicial discretion governs, a court can excuse a failure to

[3] Even where exhaustion is not jurisdictional, it "does not mean that courts may disregard a failure to exhaust and grant relief on the merits if the respondent properly asserts the defense." *Santiago-Lugo*, 785 F.3d at 475. That is because the "exhaustion requirement is still a requirement; it's just not a jurisdictional one. What its non-jurisdictional nature means is that a court need not inquire into exhaustion on its own. A court has the discretion to accept or reject a concession from the respondent that administrative remedies have been exhausted." *Id.* (citations omitted); *see also Kemokai v. U.S. Att'y Gen.*, 83 F.4th 886, 891 (11th Cir. 2023) (noting that a non-jurisdictional exhaustion requirement "is generally applied where . . . it has been asserted by a party").

exhaust where it determines, after examining "both the nature of the claim presented and the characteristics of the particular administrative procedure provided," that "the interests of the individual weigh heavily against requiring administrative exhaustion." *See id.* at 146 (noting the Court "has declined to require exhaustion in some circumstances even where administrative and judicial interests would counsel otherwise"); *Woodford*, 548 U.S. at 103 (Breyer, J., concurring in the judgment) ("Administrative law . . . contains well-established exceptions to exhaustion."). That is true when "an administrative remedy may be inadequate because of some doubt as to whether the agency was empowered to grant effective relief" or because the administrative body "has otherwise predetermined the issue before it." *See McCarthy*, 503 U.S. at 147–48 (quotation marks omitted). It can also occur when "exhaustion would prove futile." *See Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 13 (2000) (quotation marks omitted).

There is no precise list of scenarios in which these three exceptions apply. But the first situation can occur where an agency lacks either "institutional competence to resolve the particular type of issue presented, such as the constitutionality of a statute," or the "authority to grant the type of relief requested." *McCarthy*, 503 U.S. at 147–48. And "adjudication of the constitutionality of congressional enactments has generally been thought beyond the jurisdiction of administrative agencies."[4] *See Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 215 (1994) (citation modified); *Amaya-Artunduaga v. U.S. Att'y Gen.*, 463 F.3d 1247, 1251 (11th Cir. 2006) (explaining "some due process claims do not require exhaustion, because the BIA does not have the power to adjudicate those claims" but recognizing that "procedural due process claims, as well

[4] The Supreme Court has never decided "whether the oft-stated principle that agencies cannot declare a statute unconstitutional is truly a matter of jurisdiction." *See Elgin v. Dep't of Treasury*, 567 U.S. 1, 17 (2012). But the Court has explained many times, as a separation of powers principle, that "declar[ing] Acts of Congress unconstitutional" is a role that belongs to the judiciary. *See United States v. Raines*, 362 U.S. 17, 20 (1960); *cf. Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803) ("It is emphatically the province and duty of the judicial department to say what the law is.").

as procedural errors argued in due process terms, must be raised before the BIA" (citation modified)).

Similarly, the second situation can occur when an agency is bound to follow the very legal provision a party asserts is unlawful, the way administrative bodies are bound to follow their own regulations until the Attorney General "amend[s] or revoke[s]" them. *See, e.g.*, *United States v. Nixon*, 418 U.S. 683, 696 (1974) ("So long as this regulation remains in force the Executive Branch is bound by it [and] . . . is bound to respect and to enforce it."); *Gulf States Mfrs., Inc. v. NLRB*, 579 F.2d 1298, 1308 (5th Cir. 1978) ("It is well settled that an Executive Agency of the Government is bound by its own regulations, which have the force and effect of law, and the failure of an agency to follow its regulations renders its decision invalid."); *Kurapati v. U.S. Bureau of Citizenship & Immigr. Servs.*, 775 F.3d 1255, 1262 (11th Cir. 2014). And the third situation can occur when the agency has made clear that it believes it is without authority to hear or decide a claim. *See, e.g.*, *Haitian Refugee Ctr. v. Civiletti*, 503 F. Supp. 442, 469 (S.D. Fla. 1980) ("Even if the internal appeal procedures were adequate to consider such a claim, the court believes that it is unrealistic to expect that such a challenge would receive serious consideration by INS. Indeed, the Board of Immigration Appeals refuses to hear constitutional challenges or challenges to INS regulations.").

As all these precedents demonstrate, exhaustion is not required here. First, there is no clear statement, or even indication, that Congress intended exhaustion to be jurisdictional for questions about whether a noncitizen is subject to mandatory detention. *See Henderson*, 562 U.S. at 436; *Boechler*, 596 U.S. at 203–04; *Santiago-Lugo*, 785 F.3d at 473. When that is what Congress intends, it knows how to say it. *See Santos-Zacaria*, 598 U.S. at 418–19 ("Elsewhere in the laws governing immigration cases, Congress specified that no court shall have jurisdiction to review

certain matters." (quotation marks omitted)). In fact, Congress has said so plainly in a related context: an Immigration Judge's "discretionary judgment" about whether to grant or deny bond to a noncitizen who is eligible for it. *See* 8 U.S.C. § 1226(e). But as explained above, Petitioner does not challenge a discretionary decision to deny him bond; he challenges the Immigration Judge's legal conclusion that 8 C.F.R. § 1003.19(h)(2)(i)(C)—which he argues is illegal—makes him ineligible for bond. The Court therefore concludes that, in this specific context, exhaustion was not clearly required, and sound judicial discretion governs. *See McCarthy*, 503 U.S. at 144.

Exercising that discretion, the Court declines to require exhaustion because each of the three earlier-described exceptions to the doctrine applies here. *See id.* at 146. Petitioner contends that Respondents lack "any statutory or regulatory authority to subject [him] to mandatory detention," which makes his continued detention without a bond hearing an "unlawful" violation of the INA, "its implementing regulations," and his Due Process rights. [ECF No. 1 at 14]. He argues that 8 C.F.R. § 1003.19(h)(2)(i)(C) conflicts with 8 U.S.C. § 1226(c)(1) and, because it does, exceeds the statutory authority Congress gave to DHS. *See* [ECF No. 1 at 11–13]. To decide Petitioner's claim, the BIA would have to assess the validity of that statute and regulation and then, perhaps, declare one of them invalid. That it likely cannot do and, regardless, almost assuredly will not do.

Judicial bodies—from the BIA itself up to the Supreme Court—have questioned whether the BIA has the power to adjudicate the constitutionality of federal statutes or certain due process claims. *See Thunder Basin*, 510 U.S. at 215; *McCarthy*, 503 U.S. at 147–48; *Amaya-Artunduaga*, 463 F.3d at 1251; *Matter of Ruiz-Massieu*, 22 I. & N. Dec. at 838 ("[W]e are without jurisdiction to entertain a constitutional challenge."). But assuming the BIA has that power, it certainly does not have the authority to disregard an immigration regulation—not because the regulation illegally

expands on statutory authority or for any other reason. *See Matter of Fede*, 20 I. & N. Dec. 35, 36 (B.I.A. 1989) ("A regulation promulgated by the Attorney General has the force and effect of law as to this Board and immigration judges, and neither has any authority to consider challenges to regulations implemented by the Attorney General, any more than there is authority to consider constitutional challenges to the laws we administer."); *cf. Nixon*, 418 U.S. at 696; *Gulf States*, 579 F.2d at 1308; *Kurapati*, 775 F.3d at 1262. Finally, even if the BIA could disregard or invalidate a statute or a regulation, it has said again and again that it will not. *See Civiletti*, 503 F. Supp. at 469; *Matter of Fede*, 20 I. & N. Dec. at 36.

For all those reasons, an appeal of the Immigration Judge's legal conclusion that Petitioner is ineligible for bond to the BIA would be nothing but an inadequate administrative remedy. *See McCarthy*, 503 U.S. at 147–48. The Court will not require that exercise in futility. *See id.*; *Shalala*, 529 U.S. at 13; *cf. Haitian Refugee Ctr., Inc. v. Nelson*, 872 F.2d 1555, 1561 (11th Cir. 1989) ("Exhaustion is not required . . . where the administrative remedy will not provide relief commensurate with the claim."). As a result, the Court finds that administrative exhaustion is not required and proceeds to the merits of Petitioner's claim.

**D. Merits**

As stated, Petitioner argues that pursuant to 8 U.S.C. § 1226(c)(1), "Congress has clearly delineated who is subject to mandatory detention without bond" and that the statute does not include noncitizens, like Petitioner, who have been "charged as removeable under § 1227(a)(4)(C) for foreign policy concerns." *See* [ECF No. 1 ¶¶ 57, 59]. As a result, Petitioner contends that DHS's "use of 8 C.F.R. § 1003.19(h)(2)(i)(C) to expand mandatory detention to **all** individuals charged under" § 1227(a)(4) exceeds the scope of the statute and "is unlawful." *See id.* ¶ 14. Therefore, Petitioner maintains that Respondents do not have "any statutory or regulatory authority"

warranting his "mandatory detention," and the Court should grant his immediate release or grant him "a custody redetermination hearing before the Immigration Court." *See id.* ¶¶ 74, 76. In his supplemental brief, Petitioner modified his custody redetermination request and now asks this Court to "conduct its own bond hearing under its inherent equitable powers sitting in habeas." [ECF No. 31 at 11]. Petitioner argues that any request for bail before an immigration judge will be denied because the Judge "will be constrained by precedent to find Petitioner a danger to the community." *Id.*

Respondents highlight that pre-removal detention and mandatory detention for criminal noncitizens are constitutional and that Congress has given DHS the discretionary authority to decide whether to detain a noncitizen during removal proceedings or to release him on bond. *See* [ECF No. 9 at 19–20]. As a result, they argue Petitioner's detention is not "tantamount to punishment." *Id.* at 20. In their supplemental brief, Respondents note that Petitioner's immigration proceedings have not "become stagnant" and his detention has not "become effectively indefinite." [ECF No. 32 at 5]. Thus, Respondents contend that Petitioner's "detention remains reasonable and does not warrant habeas relief or a court-ordered bond hearing." *Id*. The Court agrees, in part, with Petitioner.

"An agency . . . literally has no power to act—including under its regulations—unless and until Congress authorizes it to do so by statute." *Fed. Election Comm'n v. Cruz*, 596 U.S. 289, 301 (2022) (quotation marks omitted). "An agency's regulation cannot operate independently of the statute that authorized it." *Id.* (quotation marks omitted). Nor can an agency "act outside its statutory limits." *See Cuozzo Speed Techs., LLC v. Lee*, 579 U.S. 261, 275 (2016); *see also Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 45 (2020) (Thomas, J., concurring in part) ("When an agency exercises power beyond the bounds of its authority, it acts unlawfully.").

A necessary corollary to that principle, which the Supreme Court recently made clear, is that "[c]ourts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority." *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412 (2024); *see also* 5 U.S.C. § 706 (explaining that a "reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and "hold unlawful and set aside agency action . . . found to be" either "contrary to constitutional right" or " in excess of statutory jurisdiction, authority, or limitations, or short of statutory right"). And "courts need not and . . . may not defer to an agency interpretation of the law simply because a statute is ambiguous." *See Raimondo*, 603 U.S. at 413 (overruling *Chevron U.S.A. Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984)). Furthermore, "[r]egulated parties may always assail a regulation as exceeding the agency's statutory authority in enforcement proceedings against them." *Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 823 (2024) (quotation marks omitted).

As other courts have recognized, 8 C.F.R. § 1003.19(h)(2)(i)(C) is an exercise of regulatory power beyond the bounds of DHS's authority. *See, e.g.*, *Boulos v. Dir., U.S. DHS ICE ERO Miami Field Off.*, No. 25-CV-23792, 2026 WL 898838, at *5 (S.D. Fla. Apr. 2, 2026). Congress made clear in § 1226(c) precisely which categories of noncitizens are subject to mandatory detention. *See* 8 U.S.C. § 1226(c)(1). That section defines five such groups: (1) noncitizens who have committed any offense described in 8 U.S.C. § 1182(a)(2); (2) noncitizens who have committed any offense described in 8 U.S.C. § 1227(a)(2)(A)(ii)–(iii), (B)–(D); (3) noncitizens who have both committed any offense described in § 1227(a)(2)(A)(1) and received a sentence of "at least 1 year"; (4) noncitizens who are inadmissible under § 1182(a)(3)(B) or deportable under § 1227(a)(4)(B); and (5) noncitizens who both are inadmissible under § 1182(a)(6)(A), (6)(C), or (7) and have been charged with certain enumerated crimes. *See* 8 U.S.C. § 1226(c)(1)(A)–(E). Conspicuously absent

from that very detailed list are noncitizens who are deportable under § 1227(a)(4)(C) for foreign policy reasons.

Where "Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Salinas v. U.S. R.R. Ret. Bd.*, 592 U.S. 188, 196 (2021) (citation omitted). Thus, it is reasonable for the Court to assume that when Congress included one subsection of § 1227(a)(4), § 1227(a)(4)(B), in its list of offenses warranting mandatory detention, but omitted another subsection of the same statute from its list, § 1227(a)(4)(C), the omission was purposeful. *See Freemanville Water Sys., Inc. v. Poarch Band of Creek Indians*, 563 F.3d 1205, 1209 (11th Cir. 2009) ("[W]here Congress knows how to say something but chooses not to, its silence is controlling." (citation omitted)); *Jama v. Immigr. & Customs Enf't*, 543 U.S. 335, 341 (2005) ("We do not lightly assume that Congress has omitted from its adopted text requirements that it nonetheless intends to apply, and our reluctance is even greater when Congress has shown elsewhere in the same statute that it knows how to make such a requirement manifest."). "If Congress had wanted to" include noncitizens who are deportable under § 1227(a)(4)(C) in the list of noncitizens who must be detained during removal proceedings under § 1226(c)(1), "it could have done so, as it did" when it included noncitizens who are deportable under § 1227(a)(4)(B). *See United States v. Griffith*, 455 F.3d 1339, 1342 (11th Cir. 2006). "That [Congress] did not speaks loudly and clearly."[5] *Id.*

[5] The conclusion that Congress deliberately omitted § 1227(a)(4)(C) from § 1226(c)(1) is particularly evident after examining the legislation that created § 1226(c)(1) in the first place. That statute was enacted as part of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), which "extended the mandatory detention provisions to additional classes of inadmissible and deportable aliens." Inspection & Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10312-01 (Mar. 6, 1997); *see also* IIRIRA, Pub. L. No. 104-208, 110 Stat 3009 (Sept. 30, 1996). Along with creating § 1226(c)(1), the IIRIRA also transferred 8 U.S.C. § 1251(a)(4)(C)(i) to § 1227(a)(4)(C). *See* IIRIRA, Pub L. No. 104-208, § 303(a) (adding § 1226(c)(1)); *id.* § 305(a)(2) (redesignating § 1251 as § 1227). So even though Congress was fully aware of the category of noncitizens described in § 1227(a)(4)(C)—indeed, it chose to retain identical language

For these reasons, the Court concludes that Congress's decision to omit noncitizens whom "the Secretary of State has reasonable ground to believe would have potentially serious adverse foreign policy consequences for the United States" from § 1226(c)(1) was deliberate. *See id.* § 1227(a)(4)(C). Given that deliberate congressional decision, DHS's subsequent decision to include noncitizens described in § 1227(a)(4)(C) within its regulations requiring mandatory detention during removal proceedings was beyond the bounds of its statutory authority. *See Raimondo*, 603 U.S. at 412; *Cuozzo*, 579 U.S. at 275; *Cruz*, 596 U.S. at 301; *Regents*, 591 U.S. at 45 (Thomas, J., concurring in part). As a result, the Court concludes that the portion of 8 C.F.R. § 1003.19(h)(2)(i)(C) that goes beyond DHS's statutory authority—that is, the part that purports to include the subsections of § 1227(a)(4) not explicitly listed in § 1226(c)(1)(D)—is unlawful. *See Raimondo*, 603 U.S. at 412; *Corner Post*, 603 U.S. at 823.

**E. The Required Individualized Bond Hearing**

Having concluded that Respondents cannot rely on 8 C.F.R. § 1003.19(h)(2)(i)(C) to deny Petitioner a custody redetermination hearing, all that is left to decide is which court should conduct the hearing. Petitioner suggests that this Court should use its "inherent equitable powers sitting in habeas" to conduct the bond hearing because an Immigration Judge will be bound by BIA precedent accepting the Secretary of State's letter as conclusive proof that Petitioner is "a danger to the national security of the United States." *See* [ECF No. 31 at 11–13]; *Matter of M-K-*, 29 I. & N. Dec. 556, 559 (B.I.A. 2026) ("The Immigration Judge was correct in ruling that Secretary Rubio's letter is presumptive and sufficient evidence that the respondent is removable under section 237(a)(4)(C)(i) of the INA, 8 U.S.C. § 1227(a)(4)(C)(i), and DHS is not required to present additional evidence of removability."). The Court disagrees.

---

when § 1251(a)(4)(C)(i) became § 1227(a)(4)(C)—Congress did not choose to include that group among the "criminal aliens" subject to mandatory detention in § 1226(c)(1). *See* 8 U.S.C. § 1226(c)(1).

First, the BIA precedent to which Petitioner refers does not address the issue of bond; it addresses the ultimate issue of removability under § 1227(a)(4)(C). *See Matter of M-K-*, 29 I. & N. at 559. Thus, it is not a forgone conclusion that an Immigration Judge—no longer permitted to refuse to hold a custody redetermination hearing by relying on a lack of jurisdiction under 8 C.F.R. § 1003.19(h)(2)(i)(C)—will deny Petitioner bond based solely on the INA section under which he is charged with being removable. Second, to the extent an Immigration Judge views Secretary Rubio's letter as some evidence of Petitioner's dangerousness, Petitioner may present evidence to rebut this claim and argue why granting him bond would not present a danger to the community. And, as he has alleged in his briefing to this Court, Petitioner can raise several reasons for a reasonable bond that may sway the Immigration Judge, including that Secretary Rubio's "letter offers no factual findings, evidence, or documentation supporting those claims." *See* [ECF No. 1 ¶ 69].

Finally, if the Immigration Judge denies Petitioner's bond based on Secretary Rubio's letter (or on any other basis), he may appeal that determination to the BIA. *See* 8 C.F.R. § 1003.19(h)(2)(ii) ("Nothing in this paragraph shall be construed as prohibiting an alien from seeking a redetermination of custody conditions by the Service in accordance with part 1235 or 1236 of this chapter."); 8 C.F.R. § 1236.1(d)(3) ("An appeal relating to bond and custody determinations may be filed to the Board of Immigration Appeals." (citation modified)).

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED:**

(1) Petitioner Dimitri Albert Edouard Vorbe's Verified Petition for Writ of Habeas Corpus, [ECF No. 1], is **GRANTED in part**. The Court finds that Petitioner is detained under 8 U.S.C. § 1226(a) and not 8 U.S.C. § 1226(c).

(2) Respondents shall afford Petitioner an individualized bond hearing consistent with 8 U.S.C. § 1226(a) on or before **August 24, 2026** or release Petitioner under reasonable conditions of supervision.

(3) **On or before August 31, 2026**, Respondents shall file a Status Report informing this Court of whether Petitioner was given an individualized bond hearing, the outcome of Petitioner's bond hearing, and the status of matters relevant to the Petition.

(4) All pending Motions are **DENIED as moot**.

(5) This case is **CLOSED** for administrative purposes.

(6) The Court retains jurisdiction to address matters that may arise with respect to the Petition, and either party may file a motion to reopen the case should any additional relief be sought relating to the Petition or this Order.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 17th day of August, 2026.

**DARRIN P. GAYLES**
**UNITED STATES DISTRICT JUDGE**

cc:

All counsel of record